UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WILLIE L. TOLBERT,<br><br>    Plaintiff,<br>  v.<br><br>RICHARD WEYRICH et al.,<br><br>    Defendants. | CASE NO. 3:25-cv-05694-DGE<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |

**I     INTRODUCTION**

This matter comes before the Court on sua sponte review pursuant to 28 U.S.C. § 1915(a).

**II     BACKGROUND**

Plaintiff, proceeding pro se and in forma pauperis ("IFP"), filed a complaint against prosecutor Richard Weyrich,[1] county district judge Timothy Ashcraft, public defender Peter

---

[1] Plaintiff identifies Weyrich as the prosecutor for Pierce County. (Dkt. No. 4 at 2.) Weyrich appears to be a prosecutor for Skagit County.

ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND - 1

Reich, and Tacoma Police Department officers Victor Batres; Timothy R. Caber; Angel Castaneda; Kayla Dupliech;[2] Jerome Justin Duray; Nicholas Fallis; Kevin Hanley; Shawn Gustason, Jr.; Wyatt Gustason; and Kenneth P. Smith.  (Dkt. No. 4.)

Plaintiff first alleges unlawfulness during a traffic stop.  He alleges he was unlawfully detained on the morning of May 16, 2024, by Tacoma Police Department officers.  (*Id*. at 11.)  Plaintiff alleges he was blocked on all sides by four unmarked Tacoma Police Department vehicles.  (*Id*.)  He alleges one of the four cars made contact with the vehicle he was driving.  (*Id*.)  He states two officers pointed guns at him: Officer Dupliech while searching him and Officer Wyatt Gustason while threatening to kill him.  (*Id*. at 6.)  Plaintiff alleges this was particularly traumatic and caused him "significant alarm" because of his diagnoses of post-traumatic stress disorder, bipolar disorder, and paranoia.  (*Id*. at 11.)  He also alleges injuries to his neck and face from being grabbed by the officers, as well as damage to the vehicle he was driving.  (*Id*. at 7.)

Second, Plaintiff alleges errors with police processing.  Plaintiff alleges he was detained at police headquarters for multiple hours.  (*Id*. at 11.)  Plaintiff alleges he was not read his Miranda rights.  (*Id*.)  He also alleges he was denied access to an attorney, despite his request for an attorney.  (*Id*.)  Plaintiff alleges he was subject to eight fingerprint attempts.  (*Id*.)  Plaintiff also alleges he was told he would be sent to a federal holding facility "for up to 12 days without access to communication, pending an FBI identity analysis."  (*Id*.)

Finally, Plaintiff alleges errors with his court proceedings by the prosecutor, the presiding judge, and his public defender.  First, Plaintiff alleges Weyrich "falsely claimed that drugs found during the unlawful stop tested positive for fentanyl" to justify probable cause.  (*Id*.)  Lab results

---

[2] Defendant Dupliech's name appears to occasionally be spelled Dupleich.

four months later, however, identified the substance to be acetaminophen. (*Id*.) Plaintiff further alleges Weyrich coerced him into an Alford plea for assault in the second degree "despite a lack of evidence, an identified victim, or probable cause." (*Id*. at 12.) He alleges Weyrich required this plea as a condition to dismiss a Tennessee felony conviction, which was "illegally reclassified in Washington as a class B felony." (*Id*.) Second, Plaintiff alleges Ashcraft denied his Knapstad motion "solely due to Plaintiff's 40-day detention. (*Id*.) Third, Plaintiff alleges Reich provided ineffective assistance of counsel, citing Reich's "inaction on challenging fabricated evidence and the unlawful stop." (*Id*.) He further alleges Reich is "a friend of Judge Ashcraft" and "supported" Ashcraft in denying his Knapstad motion. (*Id*.)

Plaintiff's claims are not a model of clarity, but they can be broadly organized around six causes of actions. (*Id*. at 13–14.) Plaintiff's first cause of action is under the Fourth Amendment for an "illegal search and seizure." (*Id*.) Plaintiff's second cause of action is against Weyrich under the Fourteenth Amendment for "misrepresentation of drug test results." (*Id*. at 14.) Plaintiff's third cause of action is under the Sixth Amendment for "failure to provide *Miranda* warnings, denial of legal representation, and extended detention without due process." (*Id*.) Plaintiff's fourth cause of action is for a "due process violation" stemming from a "coercive plea agreement." (*Id*.) Plaintiff's fifth cause of action is an "ex post facto violation" for reclassifying "Plaintiff's Tennessee conviction as a Class B felony." (*Id*.) Plaintiff's sixth cause of action is for "civil conspiracy under color of state law." (*Id*.) Plaintiff also alleges that the use of unmarked vehicles violates Wash. Revised Code § 46.08.065. (*Id*. at 11.)

Plaintiff seeks compensatory damages including $4,200 for damages to the vehicle he was driving, punitive damages, injunctive relief, attorney fees and costs, and any other relief deemed "just and equitable" by this Court. (*Id*. at 14.)

### III     DISCUSSION

Any complaint filed by a person proceeding IFP pursuant to 28 U.S.C. § 1915(A) is subject to a mandatory and sua sponte review.  Complaints will be dismissed if they fail to state a claim or are otherwise frivolous or malicious.  28 U.S.C. § 1915(a).  They will also be dismissed if they seek monetary relief from a defendant who is immune from such relief.  *Id*.

"The standard for determining whether [a] Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).  While a pro se plaintiff's complaint must be construed liberally, it must nevertheless contain factual assertions sufficient to support a facially plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim for relief is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The first question is on what grounds Plaintiff is bringing his suit.  Two grounds are plausible.  The first claim is that Plaintiff is challenging the constitutionality of his conviction.  This claim will fail.  Plaintiff's conviction occurred in state court and, accordingly, this Court cannot provide redress.  To the extent Plaintiff wishes to challenge his criminal conviction, this is not the right avenue to do so. *See Lance v. Dennis*, 546 U.S. 459, 463 (2006) ("Under what has come to be known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments.").  Plaintiff must go through the state court appeals process to challenge his state court conviction.

The second option available to Plaintiff is 42 U.S.C. § 1983. "A litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983." *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992). To successfully state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*; *Daniels v. Williams*, 474 U.S. 327 (1986). Both elements are required. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

The plaintiff must set forth a specific factual basis upon which he claims each defendant is liable. See *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Vague and conclusory allegations are not sufficient. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Additionally, to the extent Plaintiff wishes to challenge his criminal conviction under § 1983, he cannot. There is no requirement that an individual exhaust state claims before bringing a federal § 1983 claim. *Heck v. Humphrey*, 512 U.S. 477, 483 (1994). However, "in order to recover damages for allegedly unconstitutional conviction or imprisonment . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A

claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Heck*, 512 U.S. at 486–487.

This limitation on § 1983 extends to police officers. *Szajer v. City of Los Angeles*, 632 F.3d 607 (9th Cir. 2011). In *Szajer*, Defendant officers sold Plaintiff—an owner of a gun shop—illegal weapons even after Plaintiff expressed concern about their legality. *Id*. at 609. Plaintiff tried to report the weapons to the Sheriff's Department. *Id*. However, officers still executed a search warrant against him, found other illegal weapons, and charged him with unlawful possession of firearms. *Id*. Plaintiff filed a no contest plea, then brought suit under § 1983 claiming that the search warrant was executed under knowingly false information in violation of the Fourth Amendment. *Id*. at 609-610. The Supreme Court held the case was barred under *Heck* because "[Plaintiff's] civil claims necessarily challenge the validity of the undercover operation and in doing so imply that there was no probable cause to search for weapons." *Id*. at 612.

**A. Count I**

Plaintiff's first cause of action alleges a violation of the Fourth Amendment for an illegal search and seizure. (Dkt. No. 4 at 13–14.) Plaintiff's Complaint will be liberally construed to be a claim under 42 U.S.C § 1983.[3] Plaintiff possibly alleges both a Fourth Amendment violation in the form of excessive force by Officers Dupliech and Wyatt Gustason and a Fourth Amendment violation in the form of a seizure without reasonable suspicion or probable cause. (*Id*. at 6, 11–12.)

---

[3] To the extent Plaintiff intends to exclude evidence under the Fourth Amendment, this Complaint is not the right avenue. (*See* Dkt. No. 4 at 13.)

ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND - 6

A complaint under § 1983 must be pled with sufficient individualized particularity to show Defendant's actions caused "a deprivation of the plaintiff's rights." *Arnold v. Int'l Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). The plaintiff must first "allege[] a constitutional violation." *Robinson v. Solano County*, 278 F.3d 1007, 1012 (9th Cir. 2002). If the plaintiff alleges a constitutional violation, the officer is then entitled to qualified immunity analysis. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). An officer is entitled to qualified immunity as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity bars a suit. *Id*. (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Plaintiff's claim that the traffic stop violated the Fourth Amendment because "reasonable suspicion" is required for a lawful stop fails under *Heck* and *Szajer*. Plaintiff's claim appears to be that, without this unlawful stop, Plaintiff would not have a conviction for assault. (Dkt. No. 4 at 12–13.) Even without this bar, the claim would fail for a lack of specificity. Plaintiff fails to identify which of the ten named officers were involved in the stop. Even liberally construing Plaintiff's Complaint, it is inappropriate to conclude that the "four unmarked Tacoma Police Department vehicles" were necessarily manned by the ten named officers. (*Id*. at 11.)

However, Plaintiff's potential claim that by Officers Dupliech and Wyatt Gustason used excessive force arguably could go forward, but it is not clear whether this claim is being advanced. Plaintiff's first cause of action only vaguely asserts an "illegal search and seizure." (*Id*. at 12–13.) But Plaintiff alleges elsewhere that Dupliech pointed a gun at him and illegally searched him. (*Id*. at 6.) He further alleges Wyatt Gustason pointed a gun at him and threatened his life. (*Id*.) These assertions survive an initial *Heck* analysis because they do not appear to be

related to the constitutionality of Plaintiff's criminal conviction for assault. While it remains unclear why Plaintiff was stopped, why Plaintiff was taken into detention, or why Plaintiff was charged with assault, those unknown circumstance may not support being detained at gunpoint by these two officers. Therefore, the threshold issue is whether "the plaintiff alleged a constitutional violation." *Robinson*, 278 F.3d at 1012. A police officer who points a gun at a member of the community can be liable under the Fourth Amendment based on the specific circumstances presented. *Id*. at 1013.

Plaintiff, arguably, also states facts that might survive an initial qualified immunity analysis. Officers are entitled to qualified immunity if the alleged violation was not a clearly established constitutional or statutory violation. The Ninth Circuit has held, at times, pointing a loaded gun at a suspect is a "clearly established constitutional violation." *Thompson v. Rahr*, 885 F.3d 582, 584, 590 (9th Cir. 2018) (granting qualified immunity in the present case but denying it moving forward). Specifically, some of the factors the *Thompson* court considered were whether the gun was pointed at the individual's head; the size, age, and criminal record of the suspect; the number of officers; and the time of day. *Id*. Plaintiff fails to allege enough facts sufficient to show he would survive a thorough qualified immunity analysis but the basic facts he has alleged indicate there may be a plausible claim that could survive such analysis.

Accordingly, because it is unclear whether Plaintiff is advancing an excessive force claim and because the facts supporting such claim are rather sparse, Plaintiff is granted leave to amend his complaint. The amended complaint should identify the specific facts he relies on to support an excessive force claim under the Fourth Amendment against Dupliech and Wyatt Gustason.

**B. Count II**

1        Plaintiff's second cause of action is under the Fourteenth Amendment against Weyrich on the grounds Weyrich misrepresented Plaintiff's drug results. (Dkt. No. 4 at 13.) Plaintiff's Complaint will be liberally construed to be a claim under 42 U.S.C § 1983. Plaintiff alleges Weyrich falsely claimed the drugs in his vehicle contained fentanyl when a lab test "four months later" revealed the substance to be only acetaminophen. (*Id*. at 11.) Plaintiff cites *Brady v. Maryland*, 373 U.S. 83 (1963) and *Napue v. Illinois*, 360 U.S. 264 (1959) for the proposition Weyrich's actions violate the Fourteenth Amendment. (*Id*.)

        It is not clear whether Plaintiff's claim is barred by *Heck*. Plaintiff alleges that without Weyrich's misrepresentation, there would not have been probable cause. However, Weyrich's misrepresentation was related to drugs whereas Plaintiff's conviction is for assault. But even if the two are separate, Plaintiff's claim fails.

        Plaintiff is correct *Brady* and *Napue* require, respectively, prosecutors turn over exculpatory evidence when it favors the defendant and correct false evidence. *Brady*, 373 U.S. at 87–88; *Napue*, 360 U.S. at 269. Plaintiff misapplies these cases to this case, however. First, both *Brady* and *Napue* require the prosecutor to knowingly allow the misrepresentation to occur. *Brady*, 373 U.S. at 87–88; *Napue*, 360 U.S. at 269. Here, Plaintiff admits that the lab results only came back four months later. (Dkt. No. 4 at 11.) There is no evidence Weyrich knowingly made a misrepresentation when he stated the drugs contained fentanyl. (*Id*.) Second, both *Brady* and *Napue* require the information be material. *Brady*, 373 U.S. at 88; *Napue*, 360 U.S. at 272. Plaintiff makes no allegations Weyrich's "misrepresentation" was material to his conviction. This is particularly lacking considering his charge appears to be for assault and not for drug possession. (*Id*. at 12.)

Moreover, even if Plaintiff did raise a colorable claim under the Fourteenth Amendment, Weyrich is protected by prosecutorial immunity. Prosecutorial immunity extends to all actions by a prosecutor acting "within the scope of his prosecutorial duties." *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976). Absolute prosecutorial immunity applies where the prosecutor is acting as an advocate in judicial proceedings, such as initiating or pursuing a suit. *Kalina v. Fletcher*, 522 U.S. 118, 124 (1997) (citing *Imbler*, 424 U.S. at 410). Only qualified immunity exists, however, when a prosecutor is acting in investigative or other non-prosecutorial roles. *Id*. at 127 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273–274 (1993).

Plaintiff alleges Weyrich failed to disclose evidence and falsely used evidence. (Dkt. No. 4 at 11.) Both failing to disclose evidence and knowingly using false testimony are protected by absolute prosecutorial immunity. *Broam v. Bogan*, 320 F.3d 1023, 1029–1030 (9th Cir. 2003).

Accordingly, Plaintiff's second cause of action against Weyrich under the Fourteenth Amendment is dismissed.

**C. Count III**

Plaintiff's third cause of action is under the Sixth Amendment for Defendants "failure to provide *Miranda* warnings, denial of legal representation, and extended detention without due process." (Dkt. No. 4 at 13.) Plaintiff's Complaint will be liberally construed to be a claim under 42 U.S.C § 1983.

Again, it is unclear whether Plaintiff's claims are barred by *Heck*. It is not clear whether Plaintiff is alleging he would not have been convicted absent the failure to provide *Miranda* warnings, the failure to provide him with legal representation, and/or the failure to release him or provide him due process. If so, *Heck* would bar this claim. But even if he is alleging these violations are distinct from his conviction, they will fail.

Plaintiff's claim for a failure to provide *Miranda* warnings will be liberally construed and considered under the Fifth Amendment. *See Miranda v. Arizona*, 384 U.S. 436, 439 (1966). *Miranda* warnings are required when an individual is in "custodial interrogation." *Id*. at 444. An individual is in custodial interrogation if they are subject to "questioning initiated by law enforcement officers after [being] taken into custody or otherwise deprived of [their] freedom of action in any significant way." *Id*. An individual is in custody if there was a "formal arrest" or "restraint on freedom of movement of the degree associated with a formal arrest." *Yarborough v. Alvarado*, 541 U.S. 652, 663 (9th Cir. 2004) (quoting *Thompson v. Keohane*, 516 U.S. 99, 116 (1995). An individual can be in custody without being in custodial interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Interrogation requires "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Id*.

Plaintiff's allegations do not explicitly confirm whether he was subject to custodial interrogation. Further analysis of Plaintiff's claim for "failure to provide *Miranda* warnings" is not required, however, because it cannot constitute a colorable claim. The Supreme Court has held a violation of *Miranda* does not provide a basis for a claim under § 1983. *Vega v. Tekoh*, 597 U.S. 134, 141 (2022). Because *Miranda* imposes only prophylactic rules, violations of *Miranda* do not "necessarily constitute a Fifth Amendment violation." *Id*. at 142. Plaintiff alleges only a violation of *Miranda*, not a violation of the Fifth Amendment. Thus, Plaintiff's claim cannot constitute a colorable claim.

Plaintiff's claim regarding denial of legal counsel will be liberally construed under both the Fifth and Sixth Amendment. While a *Miranda* violation on its own cannot constitute a colorable claim under § 1983, a claim that officers failed to provide an individual subject to

ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND - 11

custodial interrogation with counsel when requested can. *See Edwards v. Arizona*, 451 U.S. 477, 481 (1981) ("*Miranda* thus declared that an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation.").

However, Plaintiff's specific allegations, even liberally construed, do not rise to a colorable claim. Plaintiff does not identify any specific officer who detained or questioned him. It would be inappropriate to allow suit against the ten named officers without additional information. *See Ashcroft*, 556 U.S. at 676 (2009). Therefore, this claim fails without any further consideration of whether Plaintiff alleges custodial interrogation or whether qualified immunity applies.

Plaintiff's claim for legal counsel also fails under the Sixth Amendment. The Sixth Amendment right to counsel only attaches when a criminal prosecution is commenced. *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). A criminal prosecution has commenced when there is an "adversary proceeding" such as a formal charge, a preliminary hearing, indictment, information, or arraignment. *United States v. Pace*, 833 F.2d 1307, 1310 (9th Cir. 1987) (citing *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)). Plaintiff appears to only allege he was denied access to counsel during his initial investigation. Plaintiff makes no allegation he was charged formally at this point. Therefore, Plaintiff's Sixth Amendment right had not yet attached.

Finally, Plaintiff's claim for extended detention without due process will be interpreted to be under the Fourth Amendment. *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1167 (9th Cir. 2013). Plaintiff alleges that he was detained "for hours," during which time he was subjected to "eight fingerprint attempts." (Dkt. No. 4 at 11.) Plaintiff's claim again fails, however, for lack of specificity because Plaintiff fails to identify which of the ten named officers detained him. It would be inappropriate to allow suit against all ten named officers. *Ashcroft*,

556 U.S. at 676 (2009). This Court declines to further analyze Plaintiff's Fourth Amendment claim or Defendants' possible qualified immunity responses given this failure to allege a proper named defendant.

Accordingly, Plaintiff's third cause of action for violations of *Miranda*, denial of counsel, and extended detention is dismissed.

### D. Count IV

Plaintiff's fourth cause of action alleges a "due process violation" for a "coercive plea." (Dkt. No. 4 at 13.) Plaintiff alleges he "was coerced into an Alford plea for Assault in the Second Degree." (*Id*. at 12.) Plaintiff alleges he was coerced into this plea "as a condition to dismiss a Tennessee Class C felony conviction, which was illegally reclassified in Washington as a Class B felony." (*Id*. at 12.) Plaintiff cites *Boykin v. Alabama*, 395 U.S. 238 (1969) for the proposition a coercive plea violates due process. (*Id*.) *Boykin* holds only that a trial judge must make an affirmative showing that a guilty plea is intelligent and voluntary. *Boykin*, 395 U.S. at 242. It has no bearing on Plaintiff's claim for civil liability.

However, Plaintiff's claim will be liberally construed to be a claim under § 1983. This claim is barred under *Heck* because it is explicitly about the plea deal. Accordingly, Plaintiff's fourth cause of action relating to his plea deal is dismissed.

### E. Count V

Plaintiff's fifth cause of action alleges a "ex post facto violation" for the "retroactive classification" of his Tennessee conviction as a "Class B felony." (Dkt. No. 4 at 13.) Plaintiff's claim is at best murky. Plaintiff alleges his Tennessee conviction was "illegally reclassified in Washington as a Class B felony" from a Class C felony. (*Id*. at 12.) Plaintiff then states Weyrich required him to take the Washington plea to dismiss this Tennessee conviction. (*Id*.)

It is unclear what Plaintiff means when he states his conviction was "reclassified" or in what capacity Weyrich would have been able to reclassify or dismiss a Tennessee conviction as a Washington prosecutor. Even assuming a reclassification of Plaintiff's Tennessee felony conviction, it is unclear what harm this had on Plaintiff as he states Weyrich dismissed this conviction as part of the plea deal. It is also unclear why Plaintiff alleges Weyrich "forced" him to accept this plea deal, given that Plaintiff could have gone to trial. Plaintiff's citation to *Collins v. Youngblood*, 497 U.S. 37 (1990) for the proposition Weyrich's actions violate the Ex Post Facto Clause lends no clarity to the issue. (*Id*.) *Collins* held a statute "allow[ing] reformation of improper verdicts" was only a "procedural change" and thus did not violate the Ex Post Facto Clause. 497 U.S. at 44. *Collins* does not address civil liability.

Even the most liberal interpretation of this claim cannot turn it into a cognizable claim. Plaintiff does not identify who reclassified his Tennessee conviction. He also does not identify how any alleged reclassification of his Tennessee conviction "alter[ed] the definition of a crime" for which he was convicted or "increase[ed] the punishment for which he is eligible as a result of that conviction." *Id*. Finally, to the extent this claim is related to plea negotiations by Weyrich, Plaintiff fails to explain how it is not barred either by *Heck* or by absolute prosecutorial immunity. *See Banks v. San Mateo Cnty. District Attorney's Office*, No. 24-cv-08681-SI, 2025 WL 1150702, at *4 (N.D. Cal. Apr. 18, 2025); *Cotton v. Cnty. of San Bernadino*, No. EDCV 15-2314-VAP (AGR), 2016 WL 7187442, at *10 (C.D. Cal. Nov. 9, 2016); *Law v. Johnson*, No. 11-CV-06163-LHK, 2012 WL 2906570, at *3 (N.D. Cal. Jul. 13, 2012).

Accordingly, Plaintiff's fifth cause of action for an ex post facto clause violation relating to his "reclassification" is dismissed.

ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND - 14

### F. Count VI

Plaintiff's sixth cause of action is for "civil conspiracy under color of state law." (Dkt. No. 4 at 14.) Plaintiff alleges "Defendants conspired to deprive Plaintiff of constitutional rights, violating 42 U.S.C. § 1983. (*Id.*) However, Plaintiff's entire Complaint is best understood as being under § 1983. Accordingly, this cause of action is dismissed as it has been absorbed into the other causes of action.

### F. Miscellaneous claims

Plaintiff's Complaint also alleges three separate claims that are not included in his counts one through six. (*Id.* at 12–13.)

First, Plaintiff alleges that Judge Ashcraft, "supported by Plaintiff's court-appointed attorney Peter Reich," denied Plaintiff's *Knapstad* motion in violation of "Plaintiff's due process rights under the Fourteenth Amendment".[4] (*Id.* at 12.) The Court will liberally construe this to be a constitutional claim against Ashcraft under § 1983. Plaintiff's claim, however, is barred by judicial immunity. When judicial immunity applies, it serves as a bar to suit. *Mireles v. Waco*, 509 U.S. 9, 10 (1991). Judicial immunity extends to all acts "normally performed by a judge" where the "expectation[] of the parties" is that they are "deal[ing] with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). Judicial immunity ends only where a judge has acted in "clear absence of all jurisdiction." *Id.* at 357 (quoting *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)).

Here, Ashcraft was ruling on a motion. (Dkt. No. 4 at 12.) Ruling on a motion is a pure judicial act where parties expect the judge to be acting in his or her judicial capacity. Plaintiff

---

[4] While none explicitly mention this allegation, this claim could have been intended to be brought under Plaintiff's second, fourth, or sixth causes of action.

ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND - 15

does not allege that this was a situation where the judge lacked jurisdiction. Accordingly, this claim, to the extent it is made, is dismissed.

Second, Plaintiff alleges that Raich provided him with ineffective assistance of counsel. (*Id.*) The Court construes this claim to be a claim under § 1983. However, ineffective assistance of counsel claims are not valid claims under § 1983. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004); *see also William v. Trimpey*, No. 2:24-cv-02148 SCR P, 2025 WL 2029238, at *3 (E.D. Cal. July 2025); *Christensen v. Ngyyen*, No. 2:20-cv-01770-APG-DJA, 2020 WL 6136220, at *4 (D. Nev. Oct. 2020). Accordingly, to the extent Plaintiff makes this claim, it is dismissed.

Finally, Plaintiff alleges a violation of Washington Revised Code § 46.08.065, which requires publicly owned vehicles to be marked. (Dkt. No. 4 at 11.) This Court can exercise supplemental jurisdiction over state law claims when "claims [] are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Court can decline to exercise supplemental jurisdiction if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction" or if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(b).

The only potential remaining issue is whether Wyatt Gustason and Dupliech used excessive force when detaining Plaintiff. There is no specific allegation that the two were in unmarked vehicles during this incident. There is no other allegation that the unmarked vehicles are so closely linked with Plaintiff's remaining claim that they form part of the same case or controversy. Accordingly, this claim is also dismissed.

ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND - 16

### IV   ORDER

Based on the foregoing, Plaintiff's claims are DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  However, Plaintiff may file an amended complaint to address the deficiencies noted in this order.  Plaintiff should also clearly state whether he is pursuing an excessive force claim against Officers Dupliech and Wyatt Gustason and identify facts specifically supporting such claim.  Plaintiff's amended complaint shall be filed no later than **October 1, 2025**.[5]

The Clerk shall calendar this event.

Dated this 10th day of September, 2025.

David G. Estudillo
United States District Judge

---

[5] Plaintiff requests that his partner be made "overseer" of this case based on his health issues. (Dkt. No. 4-1.)  Federal Rule of Civil Procedure 17(c) identifies when a person may act on behalf of a person who is deemed incompetent.  Plaintiff has offered no medical evidence establishing he is incompetent.  Moreover, the representative of an incompetent person may not proceed without an attorney because "a non-lawyer 'has no authority to appear as an attorney for others than himself.'"  *Provstgaard v. Nye County*, Case No. 2:25-cv-00649-CDS-NJK, 2025 WL 1656690, *1 (D. Nev. Jun 11, 2025) (quoting *Johns v. Cnty. of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997)).